IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shelby Moses,<br><br>      Plaintiff,<br><br>vs.<br><br>Correct Care of South Carolina, LLC,<br>*d/b/a* Correct Care Recovery Solutions,<br>*d/b/a* Correct Care Solutions,<br><br>      Defendant. | C/A No. 3:18-cv-2358-JFA-SVH<br><br><br><br>**ORDER** |

## I. INTRODUCTION

In this employment discrimination case, Plaintiff Shelby Moses ("Plaintiff") sues his former employer Correct Care of South Carolina ("Defendant"), asserting claims of sex discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the South Carolina Human Affairs Law S.C. Code § 1-13-10, et seq. ("SCHAL"), as well as defamation under South Carolina law. All pretrial proceedings in this case, including the instant motion for summary judgment (ECF No. 25), were referred to a Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.).

The Magistrate Judge assigned to this action[1] prepared a thorough Report and Recommendation ("Report") and opines that this court should grant Defendant's motion

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is

for summary judgment. (ECF No. 37). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation.

Plaintiff timely filed objections to the Report[2] (ECF No. 44) to which Defendant filed a response. (ECF No. 45). Thus, this matter is ripe for review.

## II.    LEGAL STANDARD

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate Judge, this court is not required to give an explanation for adopting the recommendation. *See Camby*

---

charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

[2] Plaintiff initially filed pro se "objections" to the Report without the knowledge of his counsel. (ECF Nos. 40 & 42). However, Plaintiff has been previously advised that the court will not accept pro se filings from him and will disregard all documents not submitted through his attorney. (ECF No. 36). Accordingly, Plaintiff's pro se submission is disregarded and this court will only consider those objections presented by counsel. Even if the court were to consider this submission, this filing only included nonspecific objections, which have the same effect as a failure to object at all. *See Staley v. Norton*, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

*v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III.    FACTUAL AND PROCEDURAL HISTORY

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report. However, a brief recitation of the factual background is necessary to analyze Plaintiff's objections.

Plaintiff began his employment with Defendant on November 14, 2016, as a captain over the sexually violent predators ("SVP") program housed at Broad River Correctional Institution ("BRCI") in Richland County, South Carolina. Plaintiff supervised the night shift, consisting of approximately 14 people. Plaintiff reported to Jared Anderson ("Anderson"), Defendant's director of security, who in turn reported to facility administrator Timothy Budz ("Budz").

In August and September 2017, one of Plaintiff's supervisees, custody officer Gregory McBride ("McBride"), was involved in several incidents, including allegations of threatening a supervisor, sleeping on the job, walking off the job, and hostile treatment towards female employees such as physically threatening behavior and harassment. Plaintiff alleges he spoke to Anderson around August or September 2017 about his concerns about McBride, including he was allegedly harassing women. At the end of September, Budz signed a disciplinary action form regarding McBride, and McBride's employment was terminated sometime thereafter for sleeping on the job, although Plaintiff was not informed of this decision.

4

On October 11, 2017, Captain Tabitha Howell ("Howell") was the outgoing captain on the second shift that ended at 11:00 P.M. immediately prior to Plaintiff's shift, the third shift, that ended the next morning on October 12, 2017. Prior to the shift change from second shift to third shift, both Plaintiff and Howell were in the supervisor's office and custody officer Sharon Griddle ("Griddle"), who was working the third shift with Plaintiff, was checking her email in the office across the hall from the supervisor's office.

While Plaintiff and Howell were in the supervisor's office, Plaintiff alleges the following occurred:

> I came in. I stopped at the door. And I always, for all the shifts, I would tell them, "I missed y'all," you know. Then I would shut the door, walk in, put my bag down . . . . I turn, and I go to get my logbook . . . off the shelves . . . . We were joking about working out. [Howell] and Griddle had been working out. And somebody – they were talking about how sore they were, and I was picking at them about that . . . . And I put my hands on [Howell's] shoulders and said, "Yeah, your're tight." . . . . We were joking around.

(ECF No. 30-1, p. 226:17–228:7). Plaintiff further alleges Howell told him to stop touching her and shrugged her shoulders, Plaintiff stopped, and everyone left. *Id*. at 230:9–17; *see also id*. at 231:9–12 ("We all left. I don't know if she left out of the office before me or if I left out before her, but Griddle and I had to get to a briefing. [Howell] had no reason to be there. She was going home.").

The next day, on October 12, 2017, Howell reported the incident that occurred the night before regarding Plaintiff, providing the following statement:

> . . . I Captain Howell was sitting in the Captain[']s office typing up my pass on log. Captain Moses walks in and says I miss you where have you been. He puts both his hands on my shoulder and started massaging them. I told him to stop several times and I yanked my body away from him. He proceeded to do it several more times and I said to him stop touching me and

5

he just laughed. I turned my chair around and asked him what was wrong with him and he just continued to laugh[]. Unit Manager McGriff ca[me] to the door and Captain Moses stopped. I finished up my pass on log and I walked into the nursing station where he followed me and grabbed my arm and started spinning me around[.] I told him to get off me and leave me alone and again I yanked my body from hi[s] grip. I do not feel safe in this back office with him by myself.

(ECF No. 30-2, p. 11).

The evening of the same day, corrections officer Kim Watkins ("Watkins") and unit manager Rodney McGriff ("McGriff") also provided statements concerning this incident. Watkins stated as follows:

I . . . Watkins was on duty in Edisto Control Room. While I was watching the cameras, I observed Capt. Moses loop his arm through Capt. Howell's and spin her around several times. Capt. Howell snatched her arm away from him and walked out [of] the nurses['] station.

(ECF No. 30-2, p. 12).

Defendant has failed to produce this video recording and Plaintiff denies this is what would be shown on the video recording. However, Plaintiff does not dispute that Watkins did provide this statement.

McGriff stated as follows:

Approx. 22:42, while this writer, Unit Manager Rodney McGriff was in the Unit Manager's office, he overheard Captain Tabitha Howell saying "stop, please get your hands off of me" at least three times. Then Unit Manager Rodney McGriff stepped out of the Unit Manager's office towards the Captain's office to investigate . . . [and] observed Captain Shelby Moses grab a fleeing Captain Tabitha Howell and began spinning her around. Captain Shelby Moses continued to disregard Captain Tabitha Howell's requests to stop touching her. Captain Shelby Moses stopped his behavior once he realized this writer, Unit Manager Rodney McGriff was standing in the doorway of the Captain's office.

(ECF No. 30-2, p. 13).

Plaintiff disputes McGriff could have personally witnessed the event in question, providing evidence that McGriff was not present for the alleged incident. However, Plaintiff does not dispute McGriff provided the above statement concerning the event in question.

In the course of Defendant's investigation of this incident, Defendant did not take a statement from Griddle, who has provided evidence in this case confirming Plaintiff's recollection of the events in question. Defendant additionally did not take a statement from any nurses who may have been present at the nurses' station at the time.

Plaintiff, who was not aware of Howell's allegations, continued to work his normal shifts from October 12, 2017, until he was called into a meeting with Anderson and Montgomery Dunbar[3] ("Dunbar") on October 18, 2017, where he was made aware of Howell's allegations concerning October 11, 2017. During this meeting, Plaintiff provided the following statement:

> . . . . I Capt. Moses came into the Supervisor's office playing and joking around with Capt. Howell and Officer Griddle. In the process, I massaged Capt. Howell's shoulders, joking as I usually do. Capt. Howell told me to stop and I stopped. I do not recall what happened after that.

(ECF No. 30-2, p. 10). Later that day, Plaintiff received a text message from Budz saying he was on suspension without pay pending investigation.

Plaintiff alleges approximately a week later, he contacted the South Carolina Human Affairs Commission ("SCHAC") about his concerns of discriminatory and retaliatory conduct. On October 26, 2017, Plaintiff sent a text message to Budz stating "good

---

[3] Dunbar is a human resources employee for Defendant.

afternoon, I visited SC Human affairs and began the process of a complaint of Retaliation for my reports of McBride[']s gender[-]based activities toward female[s]." (ECF No. 30-2, p. 9).

Plaintiff alleges on November 3, 2017, he met with Dunbar and was given a disciplinary action form stating he was terminated for inappropriate touching with an effective date of November 1, 2017. Plaintiff alleges Budz made the decision to terminate his employment, but he does not know who else had input into the termination decision. Plaintiff does not know if Defendant considered his complaints about McBride, his gender, or his complaint to SCHAC in making the decision to terminate his employment.

On November 6, 2017, Plaintiff submitted an initial inquiry questionnaire with SCHAC. On November 8, 2017, Plaintiff filed a grievance form in accordance with Defendant's problem resolution policy. On November 21, 2017, Defendant's director of human resources denied Plaintiff's appeal of his termination. On January 8, 2018, SCHAC received Plaintiff's charge of discrimination, and, following an investigation, dismissed the charge on April 11, 2018.

Plaintiff alleges that following and contemporaneous with his termination, Howell, Dunbar, Anderson, or Budz must have informed others that Plaintiff was incompetent at his job, including South Carolina Department of Corrections employee Lieutenant Williams ("Williams"), who heard that Plaintiff was "up on some sexual harassment charges." (ECF No. 30-1, p. 105:5–106:1, 115:2–17). Plaintiff also alleges Dunbar told a "state investigator" or hearing officer who worked for the "unemployment security people" that Plaintiff was a sexual harasser and sexually touched and harassed a female employee.

*Id*. at 106:2–108:13. Plaintiff alleges further that Anderson probably informed Captain Arnold that Plaintiff sexually touched and harassed a female employee. Plaintiff alleges these allegations were further published by Defendant's employees, including Demetrius Thompson ("Thompson") and Sharonda Tolliver ("Tolliver"), to other Defendant's employees and inmates housed at BRCI. Plaintiff alleges the publication of these statements has made it impossible for him to continue safely working among sexually violent predators as has been his career.

## IV. OBJECTIONS

### a. Title VII Discrimination Objections

Plaintiff's first set of objections take issue with the Magistrate Judge's conclusion that Plaintiff's Title VII gender discrimination claim should be dismissed.

Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to prove his claim of discrimination based on disparate treatment, plaintiff must show: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See also Perkins v. Int'l Paper co.* 936 F.3d 196, 207 (4th Cir. 2019). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for its decision. *Hemphill v. United Parcel Serv., Inc.,* 975 F. Supp. 2d 548, 557 (D.S.C. 2013). Once Defendant produces a legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not the

true reason but was pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000).

Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff cannot establish the fourth element of a prima facie case. Plaintiff avers that the "Magistrates [sic] argument hinges on the incorrect determination that the conduct of female employees is not comparable to the conduct Plaintiff was allegedly terminated for." (ECF No. 44, p. 3). Within the Report, the Magistrate Judge determines that Plaintiff's assertion that female employees sometimes hugged him but were not fired is not a proper comparison to Plaintiff's actions. Plaintiff avers that a "reasonable juror could absolutely determine that a physical, non-sexual hug, is comparable to a physical, non-sexual massage of the shoulders. Making such a factual determination is the province of the jury, not the Magistrate." (ECF No. 44, p. 4).

However, the Magistrate Judge correctly determined that Plaintiff's employment was not terminated because he hugged a coworker or engaged in any other consensual nonsexual touching in the workplace. Plaintiff has failed to put forth any evidence that similarly situated females were treated differently from Plaintiff when they engaged in the same behavior that led to the termination of Plaintiff's employment. In deciding whether a viable comparator exists, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Ellington v. Metro. Sec. Servs., Inc.*, 2017 WL 541051, at *2 (D.S.C. Feb. 10, 2017) (citation omitted). "The quantity and quality of the comparator's misconduct needs to be nearly identical to prevent courts from second-guessing employers' reasonable decisions

and confusing apples with oranges." *Id.*(cleaned up)*; see also Poirier v. City of Myrtle Beach*, C/A No. 4:11-CV-01731-JMC, 2013 WL 809593, at *5 (D.S.C. Mar. 5, 2013) (citing *Ward v. City of N. Myrtle Beach*, 457 F.Supp.2d 625, 643 (D.S.C. 2006)) ("To establish an inference of discrimination in a disparate discipline case, a plaintiff 'must establish that other employees were similarly situated in all relevant respects; that they dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'").

Because Plaintiff has failed to offer any supporting authority for his contentions that a consensual hug is synonymous with non-consensual shoulder massage, with which the recipient was clearly uncomfortable, he has failed to present a prima-facia case of discrimination. Additionally, Plaintiff has failed to offer any evidence as to the specific identity of those female employees accused of being comparators, let alone whether they are similarly situated in terms of rank or supervisors. Accordingly, Plaintiff has failed to create a genuine issue of material fact as to whether he was treated differently from similarly situated employees and his claim for discrimination fails.

Plaintiff also takes issue with the Magistrate Judges determination that, assuming Plaintiff could present a prima facie case, Plaintiff cannot establish a pretext for termination. Plaintiff avers that Defendant's failure to fully investigate the incident along with Defendant's vacillation between labelling Plaintiff's termination as being for "sexual harassment" or "inappropriate touching" supports a finding of pretext.

Initially, the Magistrate Judge correctly determined that the quality of Defendant's investigation does not support a finding of pretext. As held by the Fourth Circuit, "[a]lthough [plaintiff] questions the quality of [defendant's] investigation into the events that ultimately led to [his or her] termination, the fact that the investigation may not have been as thorough as [plaintiff] would have liked does not establish pretext." *Nnadozie v. ManorCare Health Servs., LLC*, 792 F. App'x 260, 262 (4th Cir. 2019) (citing *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011)). Additionally, this court does not "sit as a super-personnel department, weighing the prudence of employment decisions made by the defendants." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (holding that pretext is not a vehicle for substituting the court's judgment for that of the employer). The court need not decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette*, 133 F.3d at 299).

Here, Defendant had to choose between Plaintiff's version of events and Howell's, and Howell's version was supported by statements made by two other employees. Although Plaintiff may have provided evidence here creating a genuine issue of material fact as to whether Howell's allegations that Plaintiff's touching continued even after she requested he stop were true; that is not the issue to be determined here. It is the perception of the decision maker at the time of termination which is relevant. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996). Here, Plaintiff must show that Defendant did not fire him for the reasons alleged, regardless of the veracity of the allegations waged against him at the time of termination. "If [plaintiff] was fired for

misconduct she did not actually engage in, that is unfortunate, but a good-faith factual mistake is not the stuff of which Title VII violations are made." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017). Here, Plaintiff has presented no evidence that Defendant's proffered reasons for termination were motivated by sex or otherwise made in bad faith.

Plaintiff also takes issue with the Report's conclusion that "the record indicates Defendant did not draw the fine distinction between inappropriate touching and sexual harassment." (ECF 37, p. 15). Plaintiff avers that the Magistrate Judge fails to cite to any portion of the record for this proposition. However, Plaintiff fails to cite to any portion of the record contradicting this conclusion. Plaintiff also avers that a jury could find Defendant knew the distinction between "inappropriate touching" and "sexual harassment" but fails to indicate what the difference actually is when used by Defendant's agents. A review of the Plaintiff's deposition indicates that none of the parties attempted to draw a fine distinction between "inappropriate touching" and "sexual harassment" when outlining unacceptable behavior in the workplace. Specifically, Plaintiff stated:

> Q: As you define sexual harassment, does it include unwanted touching or can it include unwanted touching?
>
>  A Yes, it can.
>
> (ECF No. 30-1, p. 96).
>
> Q: And the next question: Sexual harassment is considered unwelcomed sexual comments or advancements and can constitute touching and non-touching nature that is unwanted by another person. And you answered that question how?
>
> A: It's true.

(ECF No. 30-1, p. 143).

Plaintiff attempts to point to Howell's testimony in which she states the alleged touching was not sexual in support of his position. However, other courts have held that

> [t]he fact that she denies having been sexually harassed on that date is of little consequence. She is a layman, and the term "sexual harassment" is a term of art. Whether or not certain behavior rises to the level of sexual harassment is a legal question. Plaintiff may have defined that term in her own mind as referring to explicit sexual language or inappropriate touching. No effort was made to elicit an explanation as to what she considered to be sexual harassment.

*E.E.O.C. v. Fed. Express Corp.*, 188 F. Supp. 2d 600, 607 (E.D.N.C. 2000).

Accordingly, Plaintiff's attempt to draw bright lines between the two terms at this point does not support his claim of sex discrimination. Accordingly, Plaintiff's objections on this determination are overruled. Put simply, the record is devoid of any indication Defendant "was motivated by discriminatory animus toward [men]," *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 238 (4th Cir.1999) (*en banc*) abrogated on other grounds by, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), or Defendant "treated him differently or with greater hostility, because he is a man." *Lack v. Wal-Mart Stores, Inc*., 240 F.3d 255, 261 (4th Cir. 2001).

### b. Title VII Retaliation Objections

Plaintiff next takes issue with the Magistrate Judge's recommendation to dismiss Plaintiff's Title VII retaliation claim. As with the previous claim, Plaintiff argues that "Defendants vacillating reasoning for Plaintiff's termination, and their willfully incomplete investigation, provide strong evidence of pretext in this case." (ECF No. 44, p. 6). However, as discussed above, these arguments fail to elucidate any error in the Magistrate

Judge's conclusion and are overruled. Accordingly, any further analysis as to Plaintiff's additional arguments regarding the use of temporal proximity to show a prima facie case of discrimination is unnecessary. Because Plaintiff has failed to provide any evidence Defendant's alleged non-discriminatory reason for Plaintiff's termination, that Plaintiff engaged in "inappropriate touching," is a pretextual justification for either illegal Title VII discrimination or retaliation, his objections are without merit.

### c. Defamation Objections

Next, Plaintiff offers objections to the Magistrate Judge's recommendation that Plaintiff's claims for defamation be dismissed. Initially, Plaintiff takes issue with the Magistrate Judge's determination that most of the evidence supporting Plaintiff's defamation claim is speculation or inadmissible hearsay. Plaintiff avers that these statements cannot be hearsay because he is not offering them for the truth of the matter asserted. Specifically, the Magistrate Judge recounted the following evidence Plaintiff presented from his own deposition:

• Howell, Dunbar, Anderson, or Budz must have said Plaintiff was incompetent in his job, but *Plaintiff did not hear any of the four say so nor did anyone report to Plaintiff that they had said so*.

• Anderson informed someone, "probably Captain Arnold," that Plaintiff sexually touched and harassed a female employee. Plaintiff clarified that this was his belief, *not that he had any evidence this occurred*.

• Plaintiff was *informed by other Defendant employees* that Tolliver and Thompson said defamatory things to them concerning Plaintiff, indicating Plaintiff was unfit to be a supervisor and a security officer.

• Williams heard that Plaintiff "was up on some sexual harassment charges," and asked Plaintiff about this situation, although *Plaintiff could not identify who informed William*s of this information.

15

> • "Officer Armstrong" informed Plaintiff that BRCI inmates "knew about what was going on with me and Correct Care," although *she did not inform Plaintiff how the inmates knew*.

(ECF No. 37, p. 21)(emphasis added).

Plaintiff's argument fails to account for the fact that all of the statements he relies on above are hearsay within hearsay (also known as double hearsay). Plaintiff is attempting to introduce evidence of Defendant employee's out of court statements through the out of court statements of various third parties. To be admissible, both statements must constitute a hearsay exception or exclusion. F.R.E. 805. Although it is possible that original statements uttered from Defendant employees satisfy one or more hearsay exceptions, or could be declared "non-hearsay," Plaintiff has offered no explanation for the admissibility of any subsequent statements which would show publication of Defendant employee's initial words to various third parties.

Additionally, this Court disagrees that these third-party statements are not offered for the truth of the matter asserted because Plaintiff is attempting to introduce them for the truth that Defendant employees in fact published these statements to a third party, not necessarily for the veracity of the original alleged defamatory statements themselves. Numerous other courts have granted motions for summary judgment based on a plaintiff's attempt to use hearsay in support of a defamation claim. *See Moody v. McLellan*, 367 S.E.2d 449, 453 (S.C. Ct. App. 1988) (granting summary judgment because "Moody failed to come forward with competent evidence that McLellan actually made the alleged statements."); *Sumter v. Jenny Craig, Inc.*, No. 3:14-CV-4460-CMC-SVH, 2016 WL

16

3397588, at *3 (D.S.C. June 21, 2016) (dismissing the plaintiff's defamation claims because, among other reasons, she had no "personal knowledge or awareness" of the alleged defamatory statement and she failed to produce "an affidavit or testimony from anyone who allegedly originated this information."); *June Cho v. Duke Univ.*, No. 1:18CV288, 2020 WL 353617, at *8 (M.D.N.C. Jan. 21, 2020) ("Dr. Im's declaration that the staff told her the doors were locked because of concerns about Plaintiff's husband is therefore inadmissible double hearsay. Here, the first level of hearsay is what Defendant Hockenberry allegedly told staff. This statement might be admissible under the party-opponent exception to the hearsay prohibition. However, Defendant Hockenberry and Dr. Im deny the statement. Plaintiff has not identified a staff member who can testify to the statement; therefore, the second level of hearsay is what the staff said to Dr. Im. There is no applicable hearsay exception for the staff's statement."); *Bronitsky v. Bladen Healthcare, LLC*, No. 7:12-CV-147-BO, 2013 WL 5327447, at *2 (E.D.N.C. Sept. 20, 2013) ("Plaintiff only cites his own testimony that Dr. Block told him that Highsmith told Dr. Block certain things about plaintiff. This is plainly inadmissible hearsay.").

Plaintiff makes no attempt to offer any exception to the prohibition on hearsay or other admissible evidence as to the publication of the alleged defamatory statements to third parties. Accordingly, these third-party statements as currently offered by Plaintiff are not admissible evidence. *Greensboro Prof. Fire Fighters Ass'n v. Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) (inadmissible hearsay "is neither admissible at trial nor supportive of an opposition to a motion for summary judgment").

The Magistrate Judge did hold that one of Plaintiff's allegations could be admissible evidence used to support a defamation claim. Specifically,

> Plaintiff heard Dunbar inform the "state investigator" who worked for the "unemployment security people" as part of a "hearing about whether or not [Plaintiff] should be entitled to obtain . . . employment compensation" that Plaintiff was a sexual harasser and "sexually touched and harassed a female employee."

(ECF No. 37, p. 21).

The Magistrate Judge ultimately held that this statement was substantially true, and truth is an absolute defense to defamation. Plaintiff argues that the Magistrate Judge substitutes herself for the jury and "essentially concludes that Plaintiff is in fact a sexual harasser or at least that somehow accusing someone of sexually touching and harassing an employee is the same as an allegation of inappropriate touching." (ECF No. 44, p. 9).

However, both Plaintiff and the Magistrate Judge overlook the fact that

> under South Carolina law, an absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it. Moreover, a South Carolina appellate court considered the privilege issue in the context of employer communications with the [South Carolina Human Affairs Commission] and determined that such disclosure of information is absolutely privileged. Based on the foregoing, the court finds that any statements made by Defendant to either the [United States Equal Employment Opportunity Commission] or the SCHAC during their investigation enjoy an absolute privilege under South Carolina law.

*Yin v. Columbia Int'l Univ.*, No. 3:15-CV-03656-JMC, 2016 WL 5349090, at *7 (D.S.C. Sept. 26, 2016) (internal citations and quotations omitted).

Consequently, any statements made by Defendant employee to a "state investigator" for the "unemployment security people" is absolutely privileged as it was made "as part of

18

some sort of hearing about whether or not [Plaintiff] should be entitled to obtain employment compensation". (ECF No. 30-1, p. 106-107).

Moreover, it appears that Plaintiff's defamation claims based on Dunbar's statements to a state investigator for unemployment benefits are additionally barred by statute. Specifically, S.C. Code Ann. § 41-27-560 states that a

> report, communication, or other similar matter, either oral or written from an employee or employer to the other or to the [South Carolina Department of Employment and Workforce][4] or its agents, representatives, or employees that has been written, sent, delivered, or made in connection with the requirements and the administration of Chapters 27 through 41 of this title must not be made the subject matter or basis of a suit for slander or libel in a court of this State.

Therefore, even if the Magistrate Judge was incorrect in concluding that Dunbar's statements were substantially true, Plaintiff's claims would still be subject to dismissal. Thus, Plaintiff's objections regarding the defamation claim fail to show any error in the Magistrate Judge's recommendations.

### d. Video Evidence Objections

Lastly, Plaintiff takes issue with the Magistrate Judge's recommendation that no action should be taken as to the spoliation of the video evidence. Throughout this order, the undersigned has construed all facts in the light most favorable to the Plaintiff. This includes disregarding disputed issues of fact concerning the missing video footage. Specifically, Defendant has presented evidence that the missing video footage shows

---

[4] The Court would note that the South Carolina Department of Employment and Workforce is the state agency "responsible for paying unemployment insurance benefits, collecting unemployment taxes, helping people find jobs, matching businesses with qualified candidates, and collecting and disseminating state/federal employment statistics." https://dew.sc.gov/about-dew.

Plaintiff grabbing Howell and spinning her around after rubbing her shoulders. Plaintiff contests this and asserts that the video footage will show no such actions. Because the evidence is construed in a light most favorable to Plaintiff, the above analysis only utilizes the uncontested determinations that Plaintiff engaged in the inappropriate touching of rubbing Howell's shoulders without consent and was fired as a result. Additionally, although Plaintiff questions the veracity of supporting statements made by Watkins and McGriff, it is not contested that the statements were in fact made and relied upon in the decision to terminate Plaintiff's employment. Therefore, absence of the video footage would not alter the above analysis and there is no further need to address the alleged spoliation.

Moreover, if the issue of spoliation were addressed, this court agrees with the Magistrate Judge's determination that Plaintiff has failed to carry his burden that any corrective measures or sanctions are warranted for Defendant's alleged failure to preserve the recorded video footage from the night in question. Accordingly, Plaintiff's objections fail to point to any error in the Report and therefore the court will adopt the Magistrate Judge's recommendation.

## V.     CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. (ECF No. 37). Accordingly, the court adopts the Report and

Recommendation. Thus, Defendant's motion for summary judgment (ECF No. 25) is granted as to all of Plaintiff's causes of action.

IT IS SO ORDERED.

June 3, 2020                              Joseph F. Anderson, Jr.
Columbia, South Carolina                 United States District Judge